UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Docket No. 04-1216DPW

|  |  |
|---|---|
| MINISTER PRACTITIONER MAUREEN P. HURLEY, Plaintiff | ) ) ) ) ) |
| v. | ) ) |
| SHARLENE PALMACHUK, Defendant | ) ) ) ) ) |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT SHARLENE PALMACHUK'S MOTION FOR SUMMARY JUDGMENT

### FACTS

At all time relevant hereto, the plaintiff, Maureen P. Hurley, was a tenant at the Peabody Housing Authority ("PHA"). The defendant, Sharlene Palmachuk, is and has been a tenant selection specialist for the PHA since 1993. [See Affidavit of Sharlene Palmachuk attached hereto as Exhibit A]. On or about February 13, 2003 the plaintiff entered the PHA offices and inquired about handicapped housing. As the plaintiff is an individual under the age of 60 she is considered a non-elderly applicant and must adhere to the requirements of non-elderly handicapped housing applicants. Ms. Palmachuk advised the plaintiff that she needed to submit physician's verification of handicapped status in order to qualify for handicapped housing as required by 760 CMR 5.07 (2)(a) [Attached hereto as Exhibit B]. The defendant presented the plaintiff with the standard paperwork which is provided to all non-elderly handicapped applicants. [See application papers attached hereto as Exhibit C]. The plaintiff informed Ms. Palmachuk that she did not need to fill out paperwork because God told her that she did not need to fill out the paperwork and that she was disabled. The plaintiff further informed Ms. Palmachuk that she does not have a doctor and that she knows what is wrong with her and can be her own doctor and does not need to fill out any paperwork. [Exhibit A]. The plaintiff did not state the nature of her disability and never asserted that her religion prevents her from seeking medical attention. [Exhibit A]. The plaintiff is not a physician or any type of certified health care provider. [Exhibit A]. The plaintiff left the office with out filling out an application. The defendant heard nothing further from the plaintiff regarding this issue until she was served with the complaint in the instant action. [Exhibit A]

On or about November 19, 2003, the plaintiff filed her complaint in this action. [See Complaint attached hereto as Exhibit D]. The plaintiff alleges that Ms. Palmachuk failed to "recognize that the first Amendment over-rides a general kind of medical doctor, in my circumstance." [Exhibit D ]. The gist of plaintiff's complaint is that the defendant violated her first amendment right to free exercise of religion by not allowing her to diagnose herself and act as her own physician and requiring her to submit a certified physician's report in order to qualify for handicapped housing.

## STANDARD FOR SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure entitles a moving party to summary judgment when "there is no genuine issue of material fact." Fed. R. Civ. P. 56(c). Material facts are those that form essential elements of the claim(s) asserted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). No genuine issue of material fact exists when the non-moving party makes a complete failure of proof on an essential element that it would have the burden of proving at trial. Celotex Corp v. Catrett, 477 U.S. 317, 322 (1986). In evaluating a summary judgment motion, the court must view the facts and inferences in the light most favorable to the nonmoving party. Flebotte v. Dow Jones & Co., 2000 U.S. Dist. LEXIS 20327 at 2.

## ARGUMENT

### THE EVIDENCE FAILS TO ESTABLISH A VIOLATION OF THE FIRST AMENDMENT OF THE US CONSTITUTION AS ALLEGED BY THE PLAINTIFF

Plaintiff alleges that her right to free exercise of religion was violated by the defendant's requirement for a certified physician's report and its refusal to accept her as her own medical doctor in her application for non-elderly handicapped housing.[1] The PHA is bound by the regulations set forth in 760CMR 5.00et.seq. 760 CMR 5.07 sets forth the requirements of eligibility for handicapped housing and states in pertinent part:

> (2) The LHA [local housing authority] shall determine whether non-elderly applicants for elderly/handicapped housing are handicapped persons of low income. Upon request, the applicant shall provide documentation sufficient for the LHA to be able to make a determination of eligibility. Such documentation shall be subject to third party verification. As part of the determination process the following actions and findings are necessary.
>
> (a) The applicant shall provide certification by a physician documenting a physical or mental impairment which is expected to be of long and continued

---

[1] It should be noted that the plaintiff never submitted an application and defendant disputes plaintiff's standing to even maintain this action.

duration but at least for more than six months.

The First Amendment of the United States Constitution states in relevant part:

> "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof...."

The question at bar is whether the regulations set forth in 760 CMR 5.00 et seq., as applied to the plaintiff, violate her constitutional right to the free exercise of religion. The answer is unequivocally no.

In Bowen v. Roy, 476 U.S. 693, 695 (1986), the plaintiff family sought to obtain welfare and food stamp benefits but objected to the requirement that they provide a social security number for their youngest daughter on the basis of their religious belief that it would make her soul impure. When defendant government lessened the family's benefits as a result of their failure to comply with regulations, plaintiff family asserted that their rights under the Free Exercise Clause of the First Amendment had been violated. Id. The Supreme Court held that no Constitutional violation had occurred. Id. at 712.

In Bowen, the Supreme Court stated, "[n]ever to our knowledge has the Court interpreted the First Amendment to require the Government itself to behave in ways that the individual believes will further his or her spiritual development or that of his or her family." Id. at 699. Precisely as the Free Exercise Clause prevents the government from demanding religious observance from its citizens, it prevents citizens from demanding that the government act in a way that comports with their own religious beliefs. Id. at 699-700. "The Free Exercise Clause is written in terms of what the government cannot do to the individual, not in terms of what the individual can exact from the government." Sherbert v. Verner, 374 U.S. 398, 412 (1963) (Douglas, J., concurring).

The protection that the First Amendment provides to a citizen's right to free exercise of religion is vital; however, the Court has always held that "claims of religious conviction do not automatically entitle a person to fix unilaterally the conditions and terms of dealings with the government. Not all burdens on religion are unconstitutional." Bowen, 476 U.S. at 702. The defendant holds utmost respect for the First Amendment, but recognizes that the Free Exercise Clause does not give the plaintiff the right to dictate the manner in which the government operates its state-funded subsidized housing program. In Bowen, the Court's decision rested in part on the nature of the violation that the plaintiff cited. The plaintiff sought benefits from the Government, but asserted that it should be excused from compliance with a regulation that all other individuals seeking the same benefit must follow. Id. at 703. The Court held that the requirement of providing a social security number is religiously neutral and uniformly applicable Id. The Court went on to make the point that the requirement "may indeed confront some applicants for benefits with choices, but in no sense does it affirmatively compel appellees, by threat of sanctions, to refrain from religiously motivated conduct or to engage in conduct that they find objectionable for religious reasons." Id.

The Supreme Court points out in Bowen, that the denial of governmental benefits is of a "wholly different, less intrusive nature" than the compulsion or prohibition under threat of sanctions for religious conduct. Id. at 704. Admittedly, in certain circumstances, forcing an individual to choose between receiving of an important benefit and following religious convictions places a burden on religion. Thomas v. Review Board of Indiana Employment Security Div., 450 U.S. 707, 717-718 (1981). However, different standards apply depending on the nature of the burden placed on religion. Bowen, 476 U.S. at 707. Bowen provides the proper test for this case:

> "Absent proof of an intent to discriminate against particular religious beliefs or against religion in general, the Government meets its burden when it demonstrates that a challenged requirement for governmental benefits, neutral and uniform in its application, is a reasonable means of promoting a legitimate public interest." 476 U.S. at 707-708.[2]

Sherbert and Thomas, supra, both use the stricter standard rejected in Bowen. Bowen is distinguishable from, but consistent with, Sherbert and Thomas. In both Sherbert [3] and Thomas[4], the government deemed plaintiffs ineligible for unemployment benefits since they had quit or refused available work "without good cause." Bowen, 476 U.S. at 708. In those cases, the statutory scheme set up an individualized mechanism for the government

---

[2] The more strict standard is applied in cases like Wisconsin v. Yoder, 406 U.S. 205 (1972), where the Court held in favor of an Amish family who complained that the school attendance laws violated their rights under the Free Exercise Clause by requiring them to act in contravention of their core Amish beliefs that they must remain aloof from the world. The stricter standard requires the government to show that their chosen means is the least restrictive means of accomplishing a compelling state interest. The Court notes that "virtually every action that the Government takes, no matter how innocuous it might appear, is potentially susceptible to a Free Exercise objection. For example, someone might raise a religious objection, based on Norse mythology, to filing a tax return on a Wednesday (Woden's day). Accordingly, if the dissent's interpretation of the Free Exercise Clause is to be taken seriously, then the Government will be unable to enforce any generally applicable rule unless it can satisfy a federal court that it has a 'compelling government interest.'" Bowen 476, U.S. at 708, n. 17.

[3] In Sherbert, the plaintiff was fired because she would not work on Saturday, the Sabbath Day of her faith. Sherbert v. Verner, 374 U.S. 398, 399 (1963). Because of her inability to work on Saturdays, she could not find other employment. Id. She filed for unemployment benefits, but her application was denied on a finding that she had, "without good cause," failed to accept suitable work when it was offered. Id. at 401.

[4] In Thomas, the plaintiff was a member of Jehovah's Witnesses who was transferred to a department that produced turrets for military tanks. Thomas v. Review Board of the Indiana Employment Security Div., 450 U.S. 707, 710 (1981) Since the plaintiff's religion forbade him from producing armaments, he asked to be laid off. When the company would not lay him off, the plaintiff quit, and subsequently sued when his application for unemployment benefits was denied on a finding that although "claimant did quit due to his religious convictions," he had not quit for "good cause arising in connection with his work." Id. at 712.

to determine whether or not applicants qualified for benefits. Id. at 708. In examining an applicant's case and deciding that a religious reason is not "good cause," then the government is not acting neutral towards religion, it is acting with hostility. Id. As a result, those cases appropriately call for the higher standard requiring the State to demonstrate a compelling reason for denying benefits. Id. On the contrary, the requirement in Bowen that applicants provide a Social Security number suggests no angst of Congress toward religion, is facially neutral and is applied to all applicants. Id. Bowen controls the case at bar. The PHA requires that every applicant provide a physician's verification of handicapped status for state-aided non-elderly handicapped housing. That requirement suggests no antagonism on the part of the government, is facially neutral toward religion (especially since it does not require treatment from a physician, only evaluation), and in is equally applied to all applicants.

The plaintiff here seeks the benefit of handicapped housing through the PHA, but believes that she should be exempt from compliance with the regulations that all other persons seeking the same benefit must follow. Similar to Bowen, the government's requirement that applicants provide a physician's verification of handicapped status is neutral in religious terms[5] and uniformly applicable. Furthermore, the requirement of a physician's verification of handicapped status is clearly a legitimate means of promoting the public interest of fair distribution of disabled housing to qualified individuals. The plaintiff "may not use the Free Exercise Clause to demand Government benefits… particularly where that insistence works a demonstrable disadvantage to the Government in the administration of the programs." Id. at 711-712.

This case is on all fours with Bowen, and accordingly this Court must find that there has been no violation of the plaintiff's First Amendment rights.

## CONCLUSION

WHEREFORE, based on the foregoing, the Defendant Sharlene Palmachuk requests that this Honorable Court grant it summary judgment on the Plaintiff's Complaint.

---

[5] The plaintiff has not provided any evidence regarding her religious tenants. For purposes of this motion defendant recognizes that certain religions prohibit members from obtaining traditional medical treatment in the face of illness. The defendant notes for the court that the PHA's requirements do not include the requirement that individuals obtain treatment for their ailment; it only requires that a physician confirm that he/she possess an impairment that qualifies him/her for handicapped housing benefits.

Respectfully submitted
Sharlene Palmachuk
By her attorney

_____
Maureen Reilly, Esq.
BBO #555369
33 Kingston Street
Boston, MA 02111
(617) 338-2144

## CERTIFICATE OF SERVICE

I, Maureen Reilly, attorney for Defendant, Sharlene Palmachuk, hereby certify that I served a copy of the Defendant, Sharlene Palmachuk's, Motion for Summary Judgment and Memorandum of Law in Support of Defendant's Motion for Summary Judgment together with Exhibits on the plaintiff, Maureen Hurley, by mailing same, first class mail to Maureen Hurley 72 Central Street #3 Peabody, MA 01960 on 7/12/05

## AFFIDAVIT OF SHARLENE PALMACHUK

I, Sharlene Palmachuk, do herby depose and state as follows:

1. I am and was at all times material hereto a tenant selector specialist for Peabody Housing Authority. I have held this position with the PHA since 1993.

2. On or about February 13, 2003 the plaintiff, Maureen Hurley, came into the PHA office to submit an application for non-elderly handicapped housing. Plaintiff is under the age of 60.

3. I informed Ms. Hurley that the regulations require that for non-elderly handicapped housing she must submit a report from a certified physician. All applications for non-elderly handicapped housing are required to submit a physician's verification of handicapped status.

4. Ms. Hurley stated that "God told me I didn't need to fill out the paperwork; God told me that I was disabled." She further informed me that she does not have a doctor and that she knows what is wrong with her and can be her own doctor and doesn't need to fill out any paperwork.

5. Ms. Hurley never informed me of the nature of her disability.

6. Ms. Hurley is not a physician or certified health care provider.

7. Ms. Hurley never stated that her religion prevented her from seeking medical attention.

8. Ms. Hurley left the office and did not fill out the requisite paperwork or leave any paperwork with the PHA.

9. I never heard from Ms. Hurley again until she filed the instant lawsuit.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 12th DAY OF July, 2005.

*Sharlene Palmachuk*
Sharlene Palmachuk
Tenant Selection Specialist
Peabody Housing Authority

EXHIBIT A

the contract rent, the household will not be eligible for continued assistance under the AHVP.

### 5.07: Eligibility of Handicapped Persons

(1) The definition of handicapped persons of low income is set out in M.G.L. c. 121B, § 1. A handicapped person of low income, as so defined, may have one or more physical or mental impairments, which shall be considered in conjunction with each other if more than one exists.

(2) The LHA shall determine whether non-elderly applicants for elderly/handicapped housing are handicapped persons of low income. Upon request, the applicant shall provide documentation sufficient for the LHA to be able to make a determination of eligibility. Such documentation shall be subject to third party verification. As part of the determination process the following actions and findings are necessary.

(a) The applicant shall provide certification by a physician documenting a physical or mental impairment which is expected to be of long and continued duration but at least for more than six months;

(b) the LHA shall determine that either certain special architectural design features or low-rent housing are not available in the private market and that the applicant is faced with living in an institution or decadent, substandard housing, or paying excessive rents; and

(c) the LHA shall determine an applicant to be of low income if the applicant's household income is within the income limits set for state-aided public housing.

(3) Examples of a person with a qualifying physical impairment which may substantially impede his or her ability to live independently in conventional housing shall include but shall not be limited to a person:

(a) who is confined to a wheelchair;

(b) who, because of the use of braces or crutches, or because of the loss of a foot or leg, or because of an arthritic, spastic, pulmonary or cardiac condition walks with significant difficulty or insecurity;

(c) who, due to a brain, spinal or peripheral nerve injury, suffers from significant coordination deficits;

(d) who is blind within the definition of blindness set out in 111 CMR 5.06(4) or successor regulatory provision;

(e) who is deaf within the definition set out in M.G.L. 6, § 191; or

(f) who has a developmental disability which prevents the person from living totally independently and would benefit from the LHA's specialized housing (such a person may include but is not limited to a person with cerebral palsy, mental retardation, or epilepsy).

### 5.08: Determination of Qualification for Placement

(1) In making its final determination the LHA shall determine if applicant and household members are qualified for public housing. An applicant and the applicant household shall be disqualified for public housing for any of the following reasons:


EXHIBIT B

# Peabody
## HOUSING AUTHORITY

SUITE 2 • 75 CENTRAL STREET • PEABODY • MASSACHUSETTS • 01960-4302
(978) 531-1938 • FAX (978) 977-0489 • EMAIL peabha@snore.net

Board Of Commissioners
KENNETH BRITT
LINDA DURKIN
MINAS DAKOS
GERALD GOLDBERG
JAMES O'BRIEN

Executive Director
FRANK SPLAINE

Dear Applicant:

You are applying or currently have an application on file with the Peabody Housing Authority as a Non-Elderly Handicapped Applicant.

In order to be eligible for this program you need to have your physician complete the enclosed form and return it to the housing authority as soon as possible.

**NOTE: YOUR APPLICATION WILL NOT BE PROCESSED UNTIL THIS VERIFICATION IS RECEIVED.**

Sincerely,
Sharlene Palmachuk
Tenant Selection Specialist

EXHIBIT C



# Peabody
## HOUSING AUTHORITY

SUITE 2 • 75 CENTRAL STREET • PEABODY • MASSACHUSETTS • 01960-4302
(978) 531-1938 • FAX (978) 977-0489 • EMAIL peabha@shore.net

**Board Of Commissioners**
KENNETH BRITT
LINDA DURKIN
MINAS DAKOS
GERALD GOLDBERG
JAMES O'BRIEN

*Executive Director*
FRANK SPLAINE

### TO BE COMPLETED BY PHYSICIAN

1. The applicant must have a physical or mental impairment which substantially impedes his or her ability to live independently

    Comment: _____

2. The applicant must have an impairment other than a history of alcohol or substance abuse.

    Comment: _____

3. What is the anticipated duration of the Applicant's impairment? (If indefinite so specify, and estimate the approximate duration to the best of your ability). _____

4. Would suitable housing conditions improve the applicant's ability to live independently and, if so, what sort? Be specific. _____

5. Other comment: _____

### PHYSICIAN'S CERTIFICATION

I certify that the information provided above represents my professional judgment and is true and correct to the best of my knowledge and belief.

_____     Date: _____
Signature           MD

Name: _____   Address: _____

Telephone No. (____)

Page 2 of 2


An Equal Housing Opportunity

# Peabody
## HOUSING AUTHORITY

SUITE 2 • 75 CENTRAL STREET • PEABODY • MASSACHUSETTS • 01960-4302
(978) 531-1938 • FAX (978) 977-0489 • EMAIL peabha@shore.net

Board Of Commissioners
KENNETH BRITT
LINDA DURKIN
MINAS DAKOS
GERALD GOLDBERG
JAMES O'BRIEN

Executive Director
FRANK SPLAINE

Name of Physician_____

Physician's Address_____
_____

Date_____

### PHYSICIAN'S VERIFICATION OF HANDICAPPED STATUS FOR STATE-AIDED ELDERLY/HANDICAPPED HOUSING

_____    _____
Applicant's Name                    Applicant's Control Number

_____
Applicant's Address

I hereby authorize release of the following information: _____
                                                          Applicant's Signature

The Housing Authority is required by state regulations to obtain a physician's certification documenting that an applicant has a qualifying physical or mental impairment in order to determine the applicant's eligibility for elderly/handicapped housing. The applicant has authorized above your release of the requested information. We would appreciate your prompt response to the questions on the reverse side of this letter. If you have questions, please contact our office. Thank you for your anticipated cooperation.

Sincerely,

_____
Sharlene Palmachuk
Tenant Selection Specialist

Page 1 of 2

An Equal Housing Opportunity

AO 440 (Rev. 8/01) Summons in a Civil Action

## UNITED STATES DISTRICT COURT

I Courthouse Way, Boston District of Massachusetts

Hurley, Maureen P.
v. Minister/Practitioner        SUMMONS IN A CIVIL ACTION

Palmachuk, Sharlene       CASE NUMBER:

**04-12513 DPW**

TO: (Name and address of Defendant)

Palmachuk, Sharlene
75 Central ST.    (Business address)
Peabody, MA. 01960 (978-977-0489)

YOU ARE HEREBY SUMMONED and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Hurley, Maureen P. PRO SE
72 Central ST.
Apt. 3
Peabody, MA.

Hand Delivered on 2/15/05 by a U.S. Marshall - no date of service filled out! Sharlene not asked to sign anything!
1-20-05

an answer to the complaint which is served on you with this summons...
of this summons on you, exclusive of the day of service. If you fail...
for the relief demanded in the complaint. Any answer that you s...
Clerk of this Court within a reasonable period of time after servic...

TONY ANASTAS
CLERK
(By) DEPUTY CLERK

DATE

EXHIBIT D

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. PLAINTIFFS NAME Minister Practitioner/
   Hurley, Maureen P.    CIVIL ACTION
                         No. 04-12516-DPW

   Defendant's NAME Palmachuk, Sharlene/
                    Tenant Selection Specialist

   COMPLAINT

   PARTIES

   1. The plaintiff is a resident of Peabody, Essex, MASSACHUSETTS and a citizen of United States.
   2. The defendant is a employee of Peabody Housing Authority, Essex, MASSACHUSETTS and a citizen of United States.

2. JURISDICTION

   Suit is under a federal question - 28 U.S.C. 1331. The Constitution of the United States, amendment L, Law Violated.

3. FACTS

   1. On Feb. 13, 03 I applied for a handicap dwelling.
   2. Tried to pass in my application and doctor's note.
   3. Defendant Sharlene Palmachuk rejected my doctor's note, then application, also.

Facts

4. My chosen doctor, a minister practitioner, of the New Testament Faith, that can't go to any other kind of doctor but a minister of the New Testament Faith. Myself, Maureen P. Hurley, a new minister practitioner, to the court, is that doctor minister. James Ch. 5 verse 13, 14 my evidence.

5. Sharlene Palmachuk didn't recognize that the First Amendment over-rides a general kind of medical doctor, in my circumstance.

6. Amendment I cites religious freedom. My faith accepts only minister doctors of my own faith, New Testament (no Law changes).

Relief

Wherefore, the plaintiff demands judgement against defendant Palmachuk, for not accepting me as a acceptable doctor. An apology. Getting a handicap dwelling in a short time. Medical restrictions are to be accepted. Wilson Square, end apartment. Heart trouble need first floor.

Minister Practitioner Maureen P. Hurley 11/17/04
Minister Practitioner
Maureen P. Hurley
72 Central St.
Peabody, MA. 01960
Apt. 3

Religious Question (Federal) on the 1st Amendment of the U.S.A. Constitution

U. S. Constitution                                    Compliments of LexisNexis

## ARTICLE VII

The Ratification of the Conventions of nine States, shall be sufficient for the Establishment of this Constitution between the States so ratifying the Same.

## AMENDMENTS

### AMENDMENT 1.
**Religious and political freedom.**
Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

### AMENDMENT 2.
**Right to bear arms.**
A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.

### AMENDMENT 3.
**Quartering soldiers.**
No Soldier shall, in time of peace be quartered in any house, without the consent of the Owner, nor in time of war, but in a manner to be prescribed by law.

### AMENDMENT 4.
**Unreasonable searches and seizures.**
The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

### AMENDMENT 5.
**Criminal actions—Provisions concerning—Due process of law and just compensation clauses.**
No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

### AMENDMENT 6.
**Rights of the accused.**
In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have